No. 03-294

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 253N

SCHOOL DISTRICT NO. 1, FERGUS COUNTY, MONTANA,

   Plaintiff and Respondent,

  v.

GLORIA WELLS-NORLIN and LENORE FROST,

   Defendants and Appellants.

APPEAL FROM:  District Court of the Tenth Judicial District,
       In and for the County of Fergus, Cause No. DV 2002-104
       The Honorable E. Wayne Phillips, Judge presiding.

COUNSEL OF RECORD:

   For Appellants:

     Robert L. Stephens, Southside Law Center, Billings, Montana

   For Respondent:

     Thomas P. Meissner, Fergus County Attorney, Lewistown, Montana

           Submitted on Briefs: September 4, 2003

               Decided: September 14, 2004

Filed:

   _____
         Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. The decision shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 School District Number 1 (School District) brought an action to quiet title on a parcel of land in Fergus County. Gloria Wells-Norlin and Lenore Frost (hereinafter collectively Wells-Norlin) responded, claiming that she owned part of the parcel in dispute. The Tenth Circuit Judicial District Court of Fergus County ruled that she did not own any part of the parcel and ordered her to vacate the premises. She appeals. We affirm.

## ISSUES

¶3 The dispositive issues before this Court are:

¶4 Was the School District's quiet title action and complaint for permanent injunction barred by the applicable statute of limitations?

¶5 Did the District Court err in finding and concluding that the surveyed boundary line was controlling on Wells-Norlin's claim of adverse possession under color of title?

## FACTUAL AND PROCEDURAL BACKGROUND

¶6 As early as 1940, Ira and Mary Pipes owned and paid taxes on a parcel of property in Fergus County. According to copies of the tax cards maintained by the Fergus County Tax Appraisal Office, and admitted into evidence, the Pipes paid taxes on this parcel from

2

1940 through 1954. The card indicates that the size of the parcel was 1/7 acre.

¶7    In May 1954, Max Kucera, Wells-Norlin's uncle, bought this parcel of Fergus County property from the Pipes for one dollar. The legal description of the property on the deed was:

> From the Northeast Corner of the SE1/4NE1/4 of Section 22, in Township 15 north of Range 18 East, Montana Meridian, run west along the North Line of said 40 acre tract, 95 feet to a point for place of beginning; run thence West along said North line 185 feet, more or less to the Easterly bank of Big Spring Creek, thence Southerly along the Easterly bank of said Creek 64 feet more or less to the North line of the County road, running up said creek, thence Northeasterly along the Northerly line of said road 185 feet more or less to the place of beginning.

¶8    The cards in the Fergus County Tax Appraisal Office on which tax payments were recorded indicate that Kucera paid taxes on this parcel of property through 1994. Wells-Norlin testified that her uncle had one or more cabins on the property that he used for domestic and rental property and that the "homestead and its curtilage had been utilized continuously for over 100 years."

¶9    In 2001, Wells-Norlin obtained the property from Kucera by quitclaim deed. The tax card on which the Pipes' and Kucera's tax payments were recorded indicates that Wells-Norlin paid the taxes on this parcel in 2001.

¶10    In 1984, the School District bought approximately twenty acres of property also located in Section 22, in Township 15, located directly north of Wells-Norlin's property. Therefore, the two properties share a common boundary running east-west. The School District claims that, since 2001, Wells-Norlin has encroached onto its property by setting up

3

a trailer, having a power pole installed, assembling several teepees on its property, cutting brush and driving on an access trail. After several futile attempts to convince Wells-Norlin that she was trespassing, the School District filed an action to quiet title in October 2002. It also sought preliminary and permanent injunctive relief.

¶11 The District Court held a hearing on the preliminary injunction on October 31, 2002. The Court heard testimony from the Fergus County Clerk and Recorder, the manager of the Lewistown Land Title Services, a licensed professional land surveyor and Wells-Norlin. Based upon the evidence, the District Court concluded that Wells-Norlin was encroaching upon School District property.

¶12 The court's Order permanently enjoined Wells-Norlin from using the School District's property, and it granted the School District's Motion for Summary Judgment. Wells-Norlin filed a timely appeal.

## STANDARD OF REVIEW

¶13 Whether the applicable statute of limitations bars an action is a conclusion of law. We review a district court's conclusions of law to determine if the court's interpretation is correct. *Brumit v. Lewis*, 2002 MT 346, ¶ 12, 313 Mont. 332, ¶ 12, 61 P.3d 138, ¶ 12 (citations omitted).

¶14 We review a district court's decision to grant or deny a Motion for Summary Judgment *de novo*. We review a summary judgment order entered pursuant to Rule 56, M.R.Civ.P., based on the same criteria applied by the district court. In proving that summary judgment is appropriate, the movant must demonstrate that no genuine issues of

4

material fact exist. Once this has been achieved, the burden shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue of fact does exist. If the district court determines that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. This is a legal determination that we review for error. *Jobe v. City of Polson*, 2004 MT 183, ¶ 10, 322 Mont. 157, ¶ 10, 94 P.3d 743, ¶ 10 (internal citations omitted).

## DISCUSSION

¶15 Wells-Norlin claims that the statute of limitations bars the School District's claim. She relies upon § 70-19-401 *and* 70-19-402, MCA, which provide respectively as follows:

Section 70-19-401, MCA:

> No action for the recovery of real property or for the possession thereof can be maintained unless it appear that the plaintiff, . . . was seized or possessed of the property in question within 5 years before the commencement of the action.

> No cause of action . . . arising out of the title to real property . . . can be effectual unless it appear that the person prosecuting the action . . . was seized or possessed of the premises in question within 5 years before the commencement of the act in respect to which such action is prosecuted or defense made.

Section 70-19-402, MCA.

¶16 In order for this Court to accept Wells-Norlin's statute of limitations argument, we would have to conclude as a matter of undisputed fact that the School District never held title to or possession of the property at issue. However, the evidence establishes that the School District did take title to the property now under dispute by a valid warranty deed in 1984.

5

Thus, it has made out a *prima facie* case of seisin or possession sufficient to survive a statute of limitations challenge.

¶17  Wells-Norlin claims, however, that the School District was not "seized" or "possessed" of the disputed property for five years before bringing suit. In support of this argument, she maintains that she, as opposed to the School District, had possession of the property for at least the last two years before suit was filed. The flaw in this argument is that both statutes require only that the plaintiff be "seized or possessed of the property *within* five years before the commencement of the action . . .," and not that it be possessed of the property *for* five years. Here, the School District took title to the property in question in 1984, and held title continuously until it filed suit. Thus, even though Wells-Norlin may have arguably occupied the property in question for two years before suit was filed, the School District has nonetheless satisfied the requirements of both statutes of limitation by being seized or possessed of the property within five years of filing suit. We therefore conclude that the statute of limitations does not bar the School District's cause of action.

¶18  We now turn to Wells-Norlin's claim that she owns the disputed portion of property through adverse possession. To sustain her argument of adverse possession under § 70-19-411, MCA, Wells-Norlin must establish that she, or Kucera, occupied the property continuously for five years *and* paid taxes on the claimed property. Failure to satisfy either requirement will defeat her adverse possession claim. Section 70-19-411, MCA, states:

> In no case shall adverse possessions be considered established under this code unless it shall be shown that the land has been occupied and claimed for a period of 5 years continuously and the party or persons, their predecessors,

6

and grantors have during such period paid all the taxes, state, county, or municipal, which have been legally levied and assessed upon said land.

¶19     Wells-Norlin maintains that she and her predecessor Kucera have occupied this property and paid taxes on it since 1954. However, the question is whether the property on which Kucera and Wells-Norlin have paid taxes is the same property that is claimed by the School District, or whether Kucera and Wells-Norlin have been paying taxes exclusively on the adjoining parcel to which Wells-Norlin currently holds title.

¶20     Substantial evidence was presented as to the precise location of the common boundary between the property purchased by the School District, which is north of the identified boundary, and the property owned by Wells-Norlin, which is south of this boundary. It is undisputed that Wells-Norlin has placed her possessions on the north side of this boundary. She argues, however, that because the Fergus County appraiser's card reflects a parcel size of 1/7 acre, she and Kucera have perforce paid taxes on 1/7 of an acre; therefore, she *must own* 1/7 of an acre. She concludes in circular fashion that if the surveyor and the School District are correct, and the property south of the boundary line is only 1/10 to 1/11 of an acre and not 1/7 of an acre, she and Kucera must have been paying taxes all along on a portion of the property that is located north of the line stated in the property deeds. As a result of having paid these taxes and establishing a physical presence on the property, she concludes that Kucera, and she in turn, have acquired the property through adverse possession.

¶21 The School District counters that even if the parcel described in Wells-Norlin's quitclaim deed and defined by the boundaries stated therein is less than 1/7 of an acre, she is not entitled to make up the difference from School District property. It asserts that the boundary between its property and Wells-Norlin's is a "solid controlling line" and expert testimony definitively established that there is no overlap between the lands owned by both parties.

¶22 At the hearing held on October 31, 2002, the manager of the Lewistown Land Title Services testified that, based upon the deeds under which the School District and Wells-Norlin hold ownership, the properties owned by both parties do not overlap and that the boundary established by the survey is the correct boundary. A licensed professional surveyor hired by the School District also confirmed the location of the common boundary and stated that, under the deeds, Wells-Norlin's property "could never go north of [the boundary] line." The surveyor further testified that it was clear to him from Wells-Norlin's deed description that "anything she owns, no matter what it is, 10,000 square feet, 6,000 square feet, 4,000, whatever it is, it's south of [the boundary] line." He speculated that if Wells-Norlin owns less land than she has been paying taxes on, it is probably the result of the road being moved northward when it was paved at some time after the original deed was created.

¶23 Subsequently, on November 27, 2002, Sue Elings, a residential appraiser with the Montana Department of Revenue, Fergus County Appraisal Office, filed with the court an affidavit in which she stated:

The '1/7 ac' notation means that the *estimated* size of the tract, on which the owners have been and are assessed for tax purposes, is 1/7th of an acre. This notation does not mean that the state of Montana Department of Revenue in any way guarantees that the tract is a full 1/7th of an acre. . . . It should go without saying that a person's deed is the basis upon which land ownership should be judged, and upon which boundary disputes should be settled. Our tax appraisal records are not meant to be relied upon by anyone as a basis to claim or assert ownership of property. . . . Thus, however, large the tract is, it is clear that the taxes assessed and paid on such tract are not for any property north of the dividing line between the two [properties]. (Emphasis added).

¶24 Based on this written and oral testimony, the District Court concluded that while Wells-Norlin was occupying the property north of her property line, neither she nor Kucera had paid taxes on this property, and, as a result, she had not acquired the property by adverse possession. The court declared, "despite [Wells-Norlin's] intense desires, the 'extra 1/7th' acre which they claim cannot and does not lie north of this controlling boundary. That it lies where they do not wish it to lie does not change deeds of record, a competent survey, or taxing authority record." We agree with the District Court.

¶25 There was no evidence to establish that Wells-Norlin has paid taxes on the property north of the boundary line; therefore, she fails to satisfy the requirements for acquiring the property by adverse possession. The School District has met its burden of demonstrating that no genuine issues of material fact exist and Wells-Norlin has not demonstrated otherwise. Therefore, summary judgment was appropriate.

¶26 Having determined that Wells-Norlin has not paid taxes on the property in dispute, we need not determine whether she has occupied it continuously for a period of five years. Section 70-19-411, MCA.

9

**CONCLUSION**

¶27    For the foregoing reasons, we affirm the District Court.


/S/ PATRICIA O. COTTER


We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ JOHN WARNER